**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CRUZ TORRES-CASAS, | No. 25-172 |
| *Petitioner*, | Agency No. A200-902-480 |
| v. | OPINION |
| TODD BLANCHE, Acting Attorney General, | |
| *Respondent*. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 21, 2026
Pasadena, California

Filed July 22, 2026

Before: Michelle T. Friedland and Eric D. Miller, Circuit
Judges, and Eric N. Vitaliano, District Judge.[*]

Opinion by Judge Friedland

---

[*] The Honorable Eric N. Vitaliano, United States District Judge for the
Eastern District of New York, sitting by designation.

## SUMMARY[*]

## Immigration

Denying Cruz Torres-Casas's petition for review of a decision of the Board of Immigration Appeals affirming the denial of cancellation of removal, the panel held that Torres's son, who turned 21 during the pendency of Torres's appeal before the BIA, was no longer a qualifying relative under 8 U.S.C. § 1229b(b)(1)(D). The panel also held that substantial evidence supported the agency's determination that Torres failed to establish that his removal would cause exceptional or extremely unusual hardship to his other qualifying relatives.

The panel agreed with the BIA that the text of § 1229b(b)(1)(D) requires the agency to assess qualifying relatives on a continuing basis, so an applicant's eligibility may change depending on when the agency finally adjudicates the application. If no appeal is taken, then the IJ is the final adjudicator, and eligibility will depend on the facts existing at the time of the IJ's decision. If a party appeals the IJ's decision, the final adjudicator is the BIA, which must predict the effect of removal on any qualifying relatives based on the state of affairs at the time it issues its decision, including any changes in the status of qualifying relatives since the time of the IJ's decision. Accordingly, a child who turns 21 during the pendency of his parent's appeal to the BIA can no longer support his parent's eligibility for cancellation of removal. The panel concluded

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

that the BIA therefore did not err in declining to consider hardship to Torres's son, who turned 21 during the pendency of Torres's appeal before the BIA.

The panel also held that the evidence did not compel the conclusion that Torres established that his removal would cause exceptional or extremely unusual hardship to his other qualifying relatives. The panel was not persuaded that the agency failed to consider all of the evidence before it. And to the extent Torres argued that the agency's factual findings were incorrect, the panel concluded that it lacked jurisdiction to review those findings.

## COUNSEL

Erika Vejar (argued), Vejar Law Firm, San Dimas, California, for Petitioner.

Edward C. Durant (argued), Attorney; Anthony J. Nardi, Trial Attorney; Jessica E. Burns, Senior Litigation Counsel; Office of Immigration Litigation; Brett A. Shumate, Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; Shelley K. Clemens, Assistant United States Attorney, Office of the United States Attorney, United States Department of Justice, Tucson, Arizona; for Respondent.

## OPINION

FRIEDLAND, Circuit Judge:

Under the Immigration and Nationality Act ("INA"), certain noncitizens subject to removal orders may apply to have their removal canceled. To be eligible for that form of relief—known as "cancellation of removal"—the applicant must establish, among other things, that his removal would cause "exceptional and extremely unusual hardship" to a spouse, parent, or child who is a U.S. citizen or a lawful permanent resident ("LPR"). 8 U.S.C. § 1229b(b)(1)(D). The INA defines "child" as "an unmarried person under twenty-one years of age." *Id.* § 1101(b)(1). This appeal requires us to decide whether a child who was under 21 when an immigration judge ruled on his noncitizen parent's application for cancellation of removal still qualifies as a "child" if he turns 21 during his parent's appeal to the Board of Immigration Appeals.

Petitioner Cruz Torres-Casas, a native and citizen of Mexico who uses the surname Torres, applied for cancellation of removal, asserting that his removal would cause exceptional and extremely unusual hardship to his U.S.-citizen son, U.S.-citizen daughter, and LPR parents. An immigration judge ("IJ") denied his application, concluding that Torres had failed to show the requisite level of hardship to those relatives. At the time of the IJ's decision, Torres's son was 20 years old—just below the INA's age cutoff. Torres then appealed that denial to the Board of Immigration Appeals ("BIA"). While his appeal was pending, his son turned 21. The BIA concluded that it could no longer consider hardship to Torres's son in evaluating whether Torres was eligible for cancellation of

removal, because his son had "aged out" during the appeal. The BIA then affirmed the IJ's determination that the probable hardship to Torres's other relatives did not rise to the level of "exceptional and extremely unusual" required for statutory eligibility.

Torres now petitions for review, arguing that the BIA erred in interpreting the INA's cancellation of removal provision to require it to consider that his son had aged during the pendency of his appeal. In Torres's view, the statute instead requires permanently fixing the age of an applicant's child on the date of the IJ's decision. He further argues that the agency's hardship determination regarding his other relatives is not supported by substantial evidence. We have jurisdiction under 8 U.S.C. § 1252. We disagree with both of Torres's arguments and therefore deny the petition.

## I.

Under the INA, the Attorney General has discretion to grant cancellation of removal to certain noncitizens.[1] As relevant here, to be eligible, the noncitizen must "establish[] that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1)(D).[2] The

---

[1] The Attorney General has delegated that authority to the agency. *See* 8 C.F.R. §§ 1003.1(d)(1), 1003.10(a); *see also id.* § 1240.20.

[2] The relevant subsection, 8 U.S.C. § 1229b(b)(1), provides in full:

> The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for

statute defines "child" as "an unmarried person under twenty-one years of age." *Id.* § 1101(b)(1). Such U.S.-citizen and LPR family members are commonly referred to as "qualifying relatives." *See, e.g.*, *Gonzalez-Juarez v. Bondi*, 137 F.4th 996, 1006 (9th Cir. 2025). Section 1229b(b)(1)(D) recognizes that a noncitizen's removal may cause extraordinary hardship to his family members who stay behind in the United States. By allowing the Attorney General to provide some noncitizens with cancellation of removal in those circumstances, the statute seeks to protect qualifying relatives from that type of hardship.

The process for obtaining cancellation of removal is established by regulation. Certain noncitizens charged as removable may seek cancellation of removal by filing an application with the IJ presiding over their removal proceedings. 8 C.F.R. § 1240.20. "An IJ deciding a noncitizen's request for cancellation of removal proceeds in two steps." *Wilkinson v. Garland*, 601 U.S. 209, 212 (2024).

---

permanent residence, an alien who is inadmissible or deportable from the United States if the alien—

(A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
(B) has been a person of good moral character during such period;
(C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and
(D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

First, the IJ determines whether the applicant has met his burden of showing that the statutory criteria for eligibility are met. *Id.* Second, if the applicant has done so, the "IJ decides whether to exercise his discretion favorably and grant the noncitizen relief in the particular case." *Id.* at 212-13. As a result, even if the applicant demonstrates that he meets all the criteria for eligibility, the IJ (or the BIA on appeal) may nonetheless deny relief as a matter of discretion. If a noncitizen eventually petitions a court of appeals for review of the agency's final decision, that discretionary determination is not subject to judicial review. *Id.* at 225 n.4.

Following the IJ's decision, the losing party may appeal that decision to the BIA: the government may appeal an IJ's decision to grant cancellation of removal, or the applicant may appeal a denial. 8 C.F.R. §§ 1240.15, 1240.2(a); *see id.* § 1003.1(b)(3). The BIA reviews "questions of law, discretion, and judgment" de novo and reviews the IJ's factual findings "only to determine whether [they] are clearly erroneous." *Id.* § 1003.1(d)(3)(i)-(ii). Pursuant to agency regulations, the BIA may "not engage in factfinding in the course of deciding cases," but it may "tak[e] administrative notice of commonly known facts such as current events or the contents of official documents." *Id.* § 1003.1(d)(3)(iv). Thus, "[a] party asserting that the [BIA] cannot properly resolve an appeal without further factfinding must file a motion for remand," and "[i]f new evidence is submitted on appeal, that submission may be deemed a motion to remand and considered accordingly." *Id.*

By regulation, during the pendency of an appeal to the BIA, the IJ's decision is automatically stayed. *Id.* § 1003.6(a). So, for example, if an IJ denies an application and enters a removal order against the applicant, removal is

stayed until the BIA decides the appeal. Once the BIA issues its decision (or the time to appeal to the BIA lapses), the agency's decision becomes administratively final and legally effective (unless the case is referred to the Attorney General for review). *Id.* § 1003.1(d)(7)(i), (h). If the agency's final decision includes the entry of a removal order against the applicant, the removal order becomes executable at that time. *See* 8 U.S.C. § 1101(a)(47)(B) (providing that a deportation order becomes "final upon the earlier of . . . a determination by the [BIA] affirming such order" or "the expiration of the period in which the alien is permitted to seek review of such order by the [BIA]"); *id.* § 1231(a)(1)(B)(i) (proscribing removal of noncitizens until "[t]he date the order of removal becomes administratively final").

A successful application for cancellation of removal provides the applicant with significant relief: the applicant's status is adjusted to that of a lawful permanent resident. *See id.* § 1229b(b)(1). But the INA caps the number of cancellations that may be granted in any given year at 4,000. *Id.* § 1229b(e)(1).

## II.

Petitioner Cruz Torres-Casas is a native and citizen of Mexico. He entered the United States without being admitted or paroled. After the government commenced removal proceedings against him, Torres conceded removability but applied for cancellation of removal under § 1229b(b)(1). Torres argued that his removal would result in "an exceptional and extremely unusual hardship" to his

four qualifying relatives—his U.S.-citizen daughter, his U.S.-citizen son, and his LPR parents.[3]

Torres's application explained that he resided with his wife, his two children, and his parents. Torres was self-employed as an auto mechanic and earned about $2,000 per week, while his wife worked in a sandwich shop. His daughter Ana Laura worked part time and was getting ready to start college to pursue nursing, for which Torres anticipated she would "get a scholarship." Torres employed his son Cruz with him in his business as a mechanic. Torres's father worked in a piñata factory. Torres and his wife generally paid the bills, but sometimes his father, Cruz, or Ana Laura would contribute. Torres, his wife, his father, Cruz, and Ana Laura were all healthy. Torres testified that his mother, by contrast, had diabetes, high blood pressure, depression, and anxiety. Torres's sister, who lived nearby, took their mother to the doctor twice per month and picked up her medications. Torres testified that no one else helped his mother go to the doctor besides his sister.

The IJ concluded that Torres was ineligible for cancellation of removal. At the time of the IJ's decision, Cruz was 20 years old, and Ana Laura was 18 years old. The IJ acknowledged that Torres's two children and his parents were "qualifying relatives" under § 1229b(b)(1)(D), but the IJ concluded that Torres's removal would not result in "exceptional and extremely unusual hardship" to them. The

---

[3] The parties stipulated that Torres met the other eligibility criteria for cancellation of removal under § 1229b(b)(1): (1) he had "been in the United States for a continuous period of not less than 10 years immediately preceding the date of his application," (2) he had exhibited "good moral character during such period," and (3) he had "no disqualifying convictions." In addition, Torres has two other children, but it is undisputed that neither is a qualifying relative.

IJ noted that the family members would suffer emotional and financial hardship if Torres were removed, but the IJ found that they could visit Torres in Mexico and thereby maintain their relationships with him. The IJ further found that Torres should be able to find work in Mexico as a mechanic and "hopefully be able to help provide support for his family in the United States." Finally, the IJ found that, in light of the help from Torres's sister, his mother's "ability to continue to get care for her medical conditions" would not be "adversely impacted" if Torres were removed. The IJ concluded that although the family would undoubtedly suffer, their hardship would not be "substantially beyond that which would normally be expected in such a situation."

Torres timely appealed to the BIA in March 2021. Over three years later, in 2024, the BIA affirmed the IJ's order and dismissed Torres's appeal. The BIA first noted that it had long interpreted § 1229b(b)(1) as requiring it to assess an applicant's eligibility—including the ages of any children—on a "continuing" basis. *Matter of Isidro-Zamorano*, 25 I. & N. Dec. 829, 831 (BIA 2012). The BIA explained that it accordingly would not consider the alleged hardship to Torres's son Cruz because, while Torres's appeal was pending, Cruz had "surpassed the age of 21" and was therefore "no longer a qualifying relative for purposes of cancellation of removal." Limiting its review to "the potential hardship to [Ana Laura] and [Torres's] lawful permanent resident parents,"[4] the BIA agreed with the IJ that Torres "did not meet his burden of demonstrating his

---

[4] Although Ana Laura had also surpassed the age of 21 when the BIA issued its decision, the BIA seems to have mistakenly believed that she remained under 21. That error did not prejudice Torres, because it at most caused the agency to consider more family hardship than was required. The error accordingly does not change the outcome here.

removal to Mexico would result in exceptional and extremely unusual hardship" to those qualifying relatives. The BIA noted that Torres did not establish that his qualifying relatives would experience "undue financial stress," given that he and his relatives would remain employed. The BIA also rejected Torres's argument that the high crime rate in Mexico showed that his relatives would suffer the requisite level of hardship, explaining that the "possibility" that Torres would be the victim of crime did not demonstrate that his removal would result in exceptional and extremely unusual hardship to his relatives.

Torres timely petitioned for review.

## III.

When the BIA agrees with the IJ's reasoning "and add[s] some of its own, we review the BIA's decision and those parts of the IJ's decision upon which it relied." *Sharma v. Garland*, 9 F.4th 1052, 1059 (9th Cir. 2021). We review questions of law and constitutional claims de novo. *Coronado v. Holder*, 759 F.3d 977, 982 (9th Cir. 2014). We review the agency's "exceptional and extremely unusual hardship" determination for substantial evidence, but we lack jurisdiction to review the factual findings underlying that determination. *Gonzalez-Juarez v. Bondi*, 137 F.4th 996, 1000 n.2, 1002-03 (9th Cir. 2025).

## IV.

We begin with Torres's argument that the BIA erred in interpreting § 1229b(b)(1)(D) to require a continuing assessment of the age of an applicant's child. In Torres's view, § 1229b(b)(1)(D) instead requires treating a child's age as fixed as of "the date on which the IJ enters a decision,"

so the statute does not permit the BIA to consider the child's aging during the appeal.

## A.

Torres first argues that his interpretation is required by precedent, relying on our decision in *Mendez-Garcia v. Lynch*, 840 F.3d 655 (9th Cir. 2016). In *Mendez-Garcia*, the petitioners had applied for cancellation of removal based in part on alleged hardship to their children, but the children turned 21 while their parents' applications were still pending before the IJs.[5] *Id.* at 661-62. The IJs then denied relief on the ground that the children had aged out of being qualifying relatives. *Id.* at 661-63. The BIA affirmed in each case, relying on its longstanding rule that "the issue of qualifying relatives" should be assessed on a "continuing" basis until the application is "finally decided." *Id.* at 659-661, 663. The petitioners argued that the agency's interpretation of § 1229b(b)(1)(D) was incorrect, and that their children's ages should have instead been fixed at a "prior time." *Id.* at 664. We rejected that argument, however, and affirmed the BIA's interpretation. We noted that § 1229b(b)(1)(D) "does not directly identify the point in time" at which a child's age should be measured, but applying *Chevron* deference, we affirmed the agency's rule as a reasonable interpretation of the statute. *Id.* at 659, 663-64 (citing *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)).[6] We

---

[5] Our court consolidated two petitions raising the same issue. *See Mendez-Garcia v. Lynch*, 840 F.3d 655, 658 n.1 (9th Cir. 2016).

[6] *Mendez-Garcia* "remains precedential authority" even though it relied on *Chevron*, which has since been overruled. *Lopez v. Garland*, 116 F.4th 1032, 1045 (9th Cir. 2024); *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024) (explaining that cases decided

concluded that the petitioners' challenge failed because, under the agency's interpretation, an applicant must show "hardship to a qualifying relative as of the time the IJ adjudicates the alien's application." *Id.* at 664.

Torres argues that our statement in *Mendez-Garcia* that an applicant must show hardship "as of the time the IJ adjudicates the alien's application" requires us to rule in his favor. In Torres's view, *Mendez-Garcia* held that the dispositive date for assessing a child's age is the date on which the IJ enters a decision, so the BIA's conclusion that Torres's son had aged out during his appeal of the IJ's decision contravened our precedent.

We think Torres overreads *Mendez-Garcia*. To be sure, *Mendez-Garcia* recognized that an applicant's child must be under 21 "as of the time" of the IJ's decision for the IJ to consider hardship to that child, but *Mendez-Garcia* did not address whether the child must still be under 21 as of the time of the BIA's decision. *Id.* In other words, *Mendez-Garcia* held that a child's being under 21 when the IJ renders her decision is a necessary condition for that child to count as a qualifying relative, but *Mendez-Garcia* did not resolve whether that is a sufficient condition for deeming the child a qualifying relative at later stages of an applicant's proceedings. *Mendez-Garcia* therefore does not answer the question here: whether a child who was under 21 at the time of the IJ's decision can nonetheless age out and cease being a qualifying relative for purposes of cancellation of removal during his parent's appeal to the BIA.

---

under *Chevron* "are still subject to statutory *stare decisis* despite [the Court's] change in interpretive methodology").

## B.

"[E]xercis[ing] independent judgment in determining the meaning of" the statute, *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024), we conclude that the BIA's interpretation of § 1229b(b)(1)(D) is correct. The statutory text and context confirm that whether an applicant for cancellation of removal has a qualifying relative should be assessed as of the time the application is finally adjudicated by the agency, either by the IJ if no appeal is taken, or by the BIA if a party appeals. Accordingly, a child who turns 21 during the pendency of his parent's appeal to the BIA can no longer support his parent's eligibility for cancellation of removal.

## 1.

Our "starting point for interpreting" the INA is "the language of the statute itself." *Idaho Conservation League v. Poe*, 86 F.4th 1243, 1246 (9th Cir. 2023) (citation modified). Here, the relevant subsection of the cancellation of removal provision states that a noncitizen must "establish[] that removal would result in exceptional and extremely unusual hardship" to a qualifying relative. 8 U.S.C. § 1229b(b)(1)(D). Because the statute is framed in conditional terms ("would result"), it requires an adjudicator to make a prediction about the future. *See Figueroa v. Mukasey*, 543 F.3d 487, 498 (9th Cir. 2008) (holding that § 1229b(b)(1)(D) requires the agency to assess a "future condition"), *abrogated on other grounds by Abebe v. Mukasey*, 554 F.3d 1203 (9th Cir. 2009) (en banc). Specifically, an adjudicator must predict whether an applicant's qualifying relative would suffer hardship if the applicant were to be removed.

As we recognized in *Mendez-Garcia*, the statute does not expressly anchor that prediction to the facts existing at a specific "point in time." *Mendez-Garcia*, 840 F.3d at 659. The statute does not say whether an adjudicator should assess the facts "at the time the alien receives a notice to appear, at the time the alien files the cancellation of removal application, at the time the [IJ] adjudicates the application, or at some other time." *Id.* But that omission is instructive: the natural implication of the text is that the prediction about whether the applicant's qualifying relative will suffer hardship should be based on the facts that exist at the time the decision is finalized.

That interpretation accords with the ordinary understanding of what it means to ask for a prediction. In general, if a person is directed to make a prediction, the person is expected to do so using the most up-to-date information available, because that maximizes the chances of its being accurate. For instance, when someone turns on the ten o'clock news, or checks the weather application on her phone, she generally expects that the weather forecast for tomorrow will be based on the most up-to-date information—not yesterday's information or last week's information. Presumably, a town would be displeased if it learned that its local weather channel was failing to account for new information that changed the forecast, even if that information emerged at the last moment. Read in light of that background understanding, the text of the cancellation of removal provision is best interpreted as instructing an adjudicator to make a prediction based on the facts available

at the time of her decision—not based on the facts at some prior point in time.[7]

We accordingly agree with the BIA that, under § 1229b(b)(1)(D), qualifying relatives should be assessed on a "continuing" basis, so an applicant's eligibility may change depending on when the agency finally adjudicates the application. *Matter of Audencio Arevalo-Vargas*, 29 I. & N. Dec. 519, 519-520 (BIA 2026); *Matter of Bautista Gomez*, 23 I. & N. Dec. 893, 894 (BIA 2006). If no appeal is taken, then the IJ is the final adjudicator, and eligibility will depend on the facts existing at the time of the IJ's decision. But if a party appeals the IJ's decision, the final adjudicator is the BIA. In that circumstance, the BIA must predict the effect of removal on any qualifying relatives based on the state of affairs at the time it issues its decision, including any changes in the status of qualifying relatives since the time of the IJ's decision. That is because a necessary component of the hardship prediction is that an applicant has a qualifying relative at the time of the final

---

[7] We construe the statute's directive to predict hardship caused by "removal" as a reference to the moment when the agency issues its final decision and enters an order of removal. That is usually the first moment at which the government may remove someone. *See* 8 U.S.C § 1231(a)(1)(B)(i) (providing that "[t]he removal period" does not begin before "[t]he date the order of removal becomes administratively final"). As a practical matter, the government generally does not remove noncitizens at that precise moment. *See id.* § 1231(a)(1)(A) (providing that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days"); *id.* § 1231(a)(1)(B) (providing that, in certain circumstances, removal may occur even later than 90 days after the entry of a final order of removal). But regardless of when the government actually removes a noncitizen, the agency must assume that removal *could* occur at the time it enters the removal order.

decision. As some other circuits have explained, "[a]n alien's removal would not cause hardship to her parent if the parent is deceased at the time she is removed. Nor would the alien's removal cause hardship to a spouse if the couple has divorced during the pendency of immigration proceedings." *Yupangui-Yunga v. Bondi*, 157 F.4th 512, 522 (2d Cir. 2025) (quoting *Diaz-Arellano v. U.S. Att'y Gen.*, 120 F.4th 722, 726 (11th Cir. 2024)).

Similarly, if a child turns 21 before the agency adjudicates his parent's cancellation of removal application, then the applicant's removal cannot cause hardship to a "child," so the agency should not consider that child in assessing the applicant's eligibility. But by the same token, the agency must account for new qualifying relatives—such as a new spouse or a newly eligible parent. *See, e.g.*, *Bautista Gomez*, 23 I. & N. Dec. at 894 (ordering reopening of an application previously denied where the applicant's "parents had become lawful permanent residents"). Our court has likewise implied that an applicant can gain a qualifying relative if his U.S.-citizen child is born during his appeal to the BIA. *See Partap v. Holder*, 603 F.3d 1173, 1175 (9th Cir. 2010).

None of that is to say, however, that the BIA may engage in traditional factfinding; indeed, the agency's regulations prohibit it from doing so. *See* 8 C.F.R. § 1003.1(d)(3)(iv); *Brezilien v. Holder*, 569 F.3d 403, 412-14 (9th Cir. 2009) (holding that the BIA erred when it "relied upon its own factual findings"). But the regulations also provide the BIA with authority to "tak[e] administrative notice of commonly known facts such as current events or the contents of official documents." 8 C.F.R. § 1003.1(d)(3)(iv). Under that regulation, where the issue is a child's age, the BIA may take notice of the passage of time since the child's birth date, the

latter of which will usually be revealed in the record through the inclusion of the child's birth certificate. As a result, the BIA may consider the child's age at the time of its decision without running afoul of the general prohibition on factfinding. By contrast, the BIA may not determine a petitioner's eligibility based on new material facts that are not subject to administrative notice—such as an alleged change in the severity of a qualifying relative's medical condition. In that circumstance, to comply with the agency's regulations and to meet its statutory obligation to ensure that its hardship determinations are based on the most up-to-date information, the BIA generally must remand to the IJ for "further factfinding." *Id.*

## 2.

Section 1229b(b)(1)(D)'s context confirms our interpretation. In particular, a comparison between § 1229b(b)(1)(D) and two neighboring provisions of the INA reinforces our conclusion that a child's age should not be treated as fixed at a time prior to the agency's final decision.

The first provision, which relates to family-based immigrant visas, demonstrates that when Congress wants to fix a child's age as of a particular date to preserve eligibility for a benefit, it does so expressly. Under § 1151(b)(2)(A)(i) of the INA, a noncitizen child of a U.S. citizen may petition to obtain a visa to live in the United States. To be eligible, however, the child must be under 21 years old. *See id.* § 1101(b)(1); *Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 46 (2014) (plurality opinion). After Congress enacted that scheme, a problem arose: long delays in petition processing resulted in many children aging out of eligibility as their petitions were pending. *Scialabba*, 573 U.S. at 50-51. To

remedy that "'aging out' problem," Congress amended the INA by enacting the Child Status Protection Act ("CSPA"), Pub. L. No. 107-208, 116 Stat. 927 (2002). *Id.* at 51. For purposes of determining eligibility for those visas, the CSPA fixes the child's age "on the date on which the petition is filed." 8 U.S.C. § 1151(f)(1). The amendment thereby specifies that if a child "was young when a U.S. citizen sponsored his entry, then Peter Pan-like, he remains young throughout the immigration process." *Scialabba*, 573 U.S. at 51. Congress could have created similar aging-out protections for children of noncitizens applying for cancellation of removal, but Congress evidently chose not to do so. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citation modified)).

The second provision, which is an even closer neighbor to § 1229b(b)(1)(D), lends additional support to our interpretation. Under § 1229b(b)(1)(A), a cancellation of removal applicant must show that he "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application." Because Congress decided to fix the timeline for the physical presence requirement to "the date of [the cancellation of removal] application," § 1229b(b)(1)(A), we may infer that Congress's decision not to specify a date for assessing the age of qualifying relatives was intentional, *see Cardoza-Fonseca*, 480 U.S. at 432. Interpreting § 1229b(b)(1)(D) as fixing a child's age as of a certain date would contravene Congress's choice.

## C.

We are not persuaded by Torres's remaining arguments. Torres contends that it would be "arbitrary and irrational" to interpret § 1229b(b)(1)(D) as permitting child relatives to age out during an appeal to the BIA. Torres observes that some applicants will lose their chance to obtain LPR status simply because the agency took a long time to decide their applications. It is true that those applicants' eligibility will be destroyed by the passage of time, through no fault of their own. That arbitrariness is a serious concern, but interpreting the statute to avoid that result would require a departure from the text. And as the Supreme Court has explained, the possibility of a "harsh outcome" cannot justify "read[ing] . . . absent word[s] into the statute." *Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004).

Although we may deviate from a statute's plain meaning where it would lead to "absurd results," *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 62 (2024), we do not think this provision presents that rare circumstance. The statute aims to protect some U.S. citizens and lawful permanent residents from the extreme hardship that would ensue if their relative were removed. Thus, as other circuits have observed, "'the applicant is really only a subsidiary beneficiary of the statute's protections, which are designed to safeguard the child, spouse, or parent' of a person seeking cancellation of removal." *Yupangui-Yunga*, 157 F.4th at 523 (quoting *Diaz-Arellano*, 120 F.4th at 726 n.4). Accordingly, Congress could have rationally concluded that canceling the removal of noncitizens who lack qualifying relatives at the time of removal would not serve the statute's objective. *See United States v. Paulson*, 68 F.4th 528, 544 (9th Cir. 2023) ("[A] statute is not absurd if it is at least rational." (citation modified)).

Torres also suggests that our interpretation will incentivize agency delay: rather than confront a difficult hardship determination regarding a qualifying child, the BIA could instead leave the appeal pending until the child ages out and then deny relief on that ground. We think that concern is overstated. The agency may always deny cancellation of removal relief as a matter of discretion, and courts lack jurisdiction to review those discretionary determinations. *See Wilkinson v. Garland*, 601 U.S. 209, 225 n.4 (2024); *Gonzalez-Juarez v. Bondi*, 137 F.4th 996, 1000 n.2 (9th Cir. 2025). Because the agency has virtually unfettered authority to deny relief regardless of eligibility, it has little incentive to drag its feet for the sole purpose of rendering applicants ineligible.

More broadly, although undertaking a continuing assessment of qualifying relatives under § 1229b(b)(1)(D) creates a harsh result for Torres, it benefits other applicants. As other circuits have recognized, "the 'present-tense determination will cut both ways,' sometimes making it easier for an immigration petitioner to obtain cancellation of removal." *Yupangui-Yunga*, 157 F.4th at 522 (quoting *Diaz-Arellano*, 120 F.4th at 726). "Babies will be born; couples will marry," and the agency "may—in fact, must—consider hardship to these newly qualifying relatives." *Id.* (quoting *Diaz-Arellano*, 120 F.4th at 726). If the rule were otherwise, "such factors as the birth of a United States citizen child, marriage to a lawful permanent resident or citizen, or a serious accident or illness involving a qualifying relative could not be used as the basis for a motion to reopen to file, or to seek further consideration of, an application for

cancellation of removal." *Bautista Gomez*, 23 I. & N. Dec. at 894.[8]

## V.

Having concluded that the BIA did not err in declining to consider hardship to Torres's son, we turn to the agency's determination that Torres's qualifying relatives would not suffer "exceptional and extremely unusual hardship" upon his removal. To meet the statutory standard for hardship, an applicant must establish "hardship that deviates, in the extreme, from the hardship that ordinarily occurs in removal cases." *Gonzalez-Juarez v. Bondi*, 137 F.4th 996, 1007 (9th Cir. 2025). We review the agency's hardship determination for substantial evidence. *Id.* at 1003. Under that deferential standard, we "must uphold the agency determination unless the evidence compels a contrary conclusion." *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019).

We conclude that substantial evidence supports the agency's determination that, although Torres's qualifying relatives would undoubtedly suffer upon his removal, their hardship would not "deviate[], in the extreme, from the hardship that ordinarily occurs in removal cases." *Gonzalez-Juarez*, 137 F.4th at 1007. The agency relied on numerous factual findings, such as its finding that Torres would be able

---

[8] Torres also argues that the BIA violated due process by requiring him to establish eligibility on a continuing basis while it took three years to decide his appeal. That argument is foreclosed by *Mendez-Garcia v. Lynch*, 840 F.3d 655 (9th Cir. 2016). There, we held that "[e]ven assuming that extraordinary delays" could give rise to a procedural due process claim, the petitioner would need to point to "very unusual circumstances," such as the agency's having ignored requests for quicker adjudication. *Id.* at 667 (citation modified). Although the BIA took a very long time to resolve his appeal, Torres points to no unusual circumstances or efforts on his part to expedite the agency's decision.

to continue to support his family financially from Mexico to some extent, and that, because most of his family members were employed, they could otherwise support themselves. Moreover, the agency found that Torres would be able to maintain his relationships with his family members and that they could visit him in Mexico. Finally, the agency acknowledged Torres's mother's health problems, but it found that Torres's removal would not meaningfully interfere with her ability to get medical care. Given those findings, the record does not "compel[]" a conclusion contrary to the one the agency reached. *Duran-Rodriguez*, 918 F.3d at 1029.

Torres insists that the agency erred by failing to consider all of the evidence before it. He argues, for example, that the agency ignored that Torres's removal will "cause [his mother's] depressive and anxiety disorders to worsen"; that Torres will likely be unable to fully support his family from Mexico because the wages there are low; and that his relatives will fear for his safety in Mexico, given the higher crime rate. We are not persuaded that the agency disregarded those concerns. The agency expressly recognized the economic, emotional, and health-related challenges Torres identified, and it "discussed all evidence that was highly probative or potentially dispositive." *Gonzalez-Juarez*, 137 F.4th at 1008. On substantial evidence review, the fact that the agency did not weigh certain considerations as heavily as Torres wanted it to does not provide grounds for reversal. And to the extent Torres argues that the agency's factual findings are incorrect, we lack jurisdiction to review those findings. *Id.* at 1000 n.2.

## VI.

For the foregoing reasons, the petition is **DENIED.**